1   **Pierce Bainbridge Beck Price & Hecht LLP**
    Carolynn Beck (SBN 264703)
2   cbeck@piercebainbridge.com
    Daniel Dubin (SBN 313235)
3   ddubin@piercebainbridge.com
    600 Wilshire Boulevard, Suite 500
4   Los Angeles, California 90017-3212
5   (213) 262-9333
6
7   *Attorneys for Plaintiffs*
8
9           THE UNITED STATES DISTRICT COURT
         FOR THE CENTRAL DISTRICT OF CALIFORNIA
10

| | |
|---|---|
| 11 **James Baker,** an individual, aka Blocboy JB; and **Bloc Nation, LLC**, a Tennessee limited liability company, | Case No. |
| Plaintiffs, | **Complaint for:** |
| v. | 1. **Direct Infringement of Copyright;** |
| **Epic Games, Inc.**, a North Carolina corporation; and **Does 1 through 50**, inclusive, | 2. **Contributory Infringement of Copyright;** |
| Defendants. | 3. **Violation of the Right of Publicity under California Common Law;** |
| | 4. **Violation of the Right of Publicity under Cal. Civ. Code § 3344;** |
| | 5. **Unfair Competition Under Cal. Bus. & Prof. Code § 17200, et seq.** |
| | 6. **Trademark Infringement under 15 U.S.C. § 1125(a);** |
| | 7. **Trademark Infringement under California Common Law;** |
| | 8. **Trademark Dilution under 15 U.S.C. § 1125(c)** |

28

1                                        **Demand for Jury Trial**

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Complaint**

1    Plaintiffs James Baker, aka Blocboy JB, and Bloc Nation, LLC
2  ("Plaintiffs" or "Baker"), by and through their undersigned counsel,
3  asserts the following claims against Defendant Epic Games, Inc.
4  ("Epic") and Does 1 through 50 (collectively referred to as "Defendants"),
5  and alleges as follows:

## I. OVERVIEW

7    1.    Through its unauthorized misappropriation of Baker's
8  highly popular signature dance, the "Shoot," in its video game Fortnite
9  Battle Royale ("Fortnite"), Epic has unfairly profited from exploiting
10 Baker's protected creative expression, likeness, and trademark without
11 consent or authorization.

12   2.    Baker, also known by the alter ego and stage name, "Blocboy
13 JB," is a professional rapper who created the "Shoot" dance, which
14 exploded in popularity following Baker's 2017 release of his hit song by
15 the same name and its accompanying music video that demonstrates
16 the dance.   The Shoot dance is inextricably linked to Baker and
17 continues to be a part of his celebrity persona.

18   3.    Defendants capitalized on the Shoot's popularity,
19 particularly with its younger fans, by selling the Shoot dance as an in-
20 game purchase in Fortnite as an "emote," which players can buy to
21 customize their in-game avatars by enabling these avatars to perform
22 the Shoot dance in Fortnite.

23   4.    Like selling a cheap knockoff, Defendants sold the Shoot
24 dance in-game and simply renamed it to "Hype."  However, the Hype
25 and the Shoot are one and the same.  Indeed, the Hype was immediately
26 recognized by players and media worldwide as the Shoot dance.
27 Although identical to the dance created, popularized, and demonstrated
28 by Baker, Epic did not credit Baker nor seek his consent to use, display,

1    reproduce, sell, or create a derivative work based upon Baker's Shoot
2    dance, likeness or trademark.

3          5.      Since being released in or around September 2017, Fortnite
4    has become among the most popular video games ever.  It was recently
5    reported that Epic grossed a $3 billion profit for 2018 fueled by the
6    success of Fortnite.  Indeed, following Fortnite's inclusion of the "Hype"
7    emote in May 2018, Fortnite enjoyed the "biggest month ever for a video
8    game" and made approximately $318 million in that month alone.  As a
9    free-to-play game, Fortnite derives its sales exclusively through these
10    types of in-game purchases.  Epic should not be able to profit from
11    Baker's hard-earned fame and hard work by its intentional
12    misappropriation of Baker's original content, likeness, or trademark.
13    Epic cannot increase the value of its main product by faking
14    endorsements by celebrities.  Baker seeks injunctive relief and
15    damages, including, but not limited to, Epic's profits attributed to its
16    improper use of the Shoot and Baker's likeness.

17          **II.   THE PARTIES**

18          6.      Baker resides in Memphis, Tennessee.  He is better known
19    as the popular rapper, Blocboy JB.

20          7.      Bloc Nation, LLC is a Tennessee limited liability company
21    with its principal place of business at 5348 Gloucester Avenue,
22    Memphis Tennessee 38135.

23          8.      Epic is a North Carolina business corporation with its
24    principal place of business at 620 Crossroads Boulevard, Cary, NC
25    27518.  Epic is the creator and developer of the Fortnite video game
26    franchise, which was first released in July 2017.

27

28

1
2

## III. SUBJECT MATTER JURISDICTION AND VENUE

3      9.    The Court has subject matter jurisdiction over this action
4  pursuant to 28 U.S.C. § 1331 (federal question), 28 U.S.C. § 1332
5  (diversity), and 28 U.S.C. § 1367 (supplemental jurisdiction).

6      10.    Venue is proper in this District under A) 28 U.S.C. §
7  1391(b)(2) (federal question jurisdiction), because a substantial part of
8  the events or omissions giving rise to the claim occurred in this District;
9  and B) 28 U.S.C. §§ 1391(b)(1) and (c) (personal jurisdiction), because
10  all defendants are subject to personal jurisdiction in this State and at
11  least one in this District.

12

## IV. FACTUAL BACKGROUND

13

### A.    Blocboy JB and the Creation of the Shoot Dance

14      11.    Raised in Memphis, Tennessee, Baker began rapping when
15  he was fourteen years old under the name "Blocboy JB."

16      12.    When Baker was twelve years old, his father broke out of
17  prison in order to see him. His formative years were spent on the
18  streets, surrounded by gang members.

19      13.    Baker started featuring his music on SoundCloud in 2012.
20  His mixtape, *Who Am I*, was released in 2016, and featured the song,
21  "No Chorus Pt. 6," which currently has over 3 million views on YouTube.

22      14.    In 2017, Baker created the "Shoot" dance and recorded the
23  accompanying song by the same name.  In July 2017, Baker released
24  "Shoot," a rap that celebrates him and his life in Memphis.  The song
25  was accompanied by a music video posted on YouTube, where Baker is
26  depicted performing the dance that he named after his stage name,
27  Blocboy JB, with his friends in his hometown of Memphis.  The song's
28

1   chorus features Baker singing while performing his signature dance
2   move.

3        15.   By January 2019, the Shoot music video had accumulated
4   over 30 million views on YouTube. The video can be found at
5   https://www.youtube.com/watch?v=P1o4dGFDrhc.

6        16.   Since creating the Shoot dance, Baker incorporated it into
7   his performances around the country.  Baker has also posted videos of
8   himself and his friends performing the dance on YouTube and other
9   social media platforms, including Instagram and Facebook.

10       17.   Baker has also released three other wildly popular songs
11   that have featured other famous artists, including "Rover," "Look Alive"
12   featuring Drake, and Rover 2.0 featuring 21 Savage.

13       18.   The original "Rover" song currently has over 12 million
14   views on YouTube.

15       19.   "Look Alive" charted at number 5 on the US Billboard Hot
16   100, number 3 on the US Billboard Hot R&B/Hip-Hop Songs and
17   number 2 on the US Billboard Rhythmic songs.  The music video for
18   "Look Alive," which shows Baker and Drake performing the Shoot,
19   currently has over 254 million views on YouTube.  The video can be
20   found at https://www.youtube.com/watch?v=NV-3s2wwC8c.

21       20.   The "Rover 2.0" music video currently has over 45 million
22   views on YouTube.

23       21.   As soon as the "Shoot" YouTube video was released, the
24   Shoot dance created a firestorm and became extraordinarily popular.
25   Over the next year, Internet users created the "Shoot Dance Challenge,"
26   filming themselves performing Baker's signature move.   Athletes,
27   celebrities, and other media personalities all took part.

28

**Complaint**

22.   Since its release in 2017 and its rise to fame in 2018, the Shoot song and dance maintained its popularity.  It grew so popular that it was instantly recognizable in a Pizza Hut commercial featuring Antonio Brown and Juju Smith-Schuster, star athletes for the Pittsburgh Steelers.  The commercial can be found at https://www.youtube.com/watch?v=ecGt4Et-CBk.

23.   The Shoot dance has also been used by the likes of the artists Drake and Chris Brown in their shows.  The Shoot grew so popular that it was eventually nominated for a Nickelodeon Kids Choice Award in the category of "Favorite Dance Trend" in 2018.

24.   Baker continues to successfully use the Shoot commercially. Baker performs the Shoot song and dance at concerts, events and festivals.  Other artists have sought and been granted licenses from Baker in exchange for compensation to perform the Shoot dance in their concerts and performances.

25.   The Shoot has become synonymous with Baker, who is unanimously credited with creating the dance that captivated so many people, and who performs the Shoot song and dance at every performance.  Baker has also been interviewed numerous times about the creation of the Shoot and how to properly perform it.  Accordingly, the Shoot is a part of Baker's identity and the dance's unique movements readily evoke imagery of Baker's Shoot music video.

**B.   Fortnite:  The Most Popular Video Game Ever**

26.   Even prior to releasing Fortnite, which would become among the most popular and successful video games ever, Epic had already developed two popular video game franchises:  Unreal and Gears of War.  Since releasing the first Gears of War game in 2005, Epic released

several subsequent Gears of War video games, and the franchise has made has made over $1 billion in total sales.

27.   In or around 2011, following the release of the third Gears of War installment, Fortnite began from an Epic internal video game hackathon, or a gathering of Epic developers to brainstorm ideas and create games in a short period.  Although the Fortnite game was not developed during the hackathon, the idea to merge building games (i.e., Minecraft) and shooter games (i.e., Gears of War or Call of Duty) emerged during the Hackathon.

28.   In or around July 2017, Epic released the initial version of Fortnite as a paid early-access video game.  However, by September 2017, after PlayerUnknown's Battlegrounds—a game which occupied the same "battle royale" genre as Fortnite—became a worldwide success, Epic released Fortnite Battle Royale, a free-to-play battle royale third person shooting game on the Windows, macOS, PlayStation 4 and Xbox One platforms.  Epic subsequently released Fortnite on the iOS, Nintendo and Android platforms on April 2, 2018, June 12, 2018, and August 9, 2018, respectively.

29.   Similar to PlayerUnknown's Battlegrounds, Fortnite utilizes the battle royale format where up to 100 players, alone, in pairs, or groups, compete to be the last player or group alive.  Indeed, similar to Battlegrounds and Gears of War, Fortnite features the use of weapons and violence, that players use to eliminate the competition by attacking and shooting them.

30.   As a free-to-play video game, Epic allows players to download and play Fortnite for free.  Fortnite is supported by in-game transactions where players can purchase virtual currency, called "Vinderbucks" or "V-Bucks."  The players in turn use V-Bucks to

– 6 –

**Complaint**

purchase customizations for their in-game avatars, including new characters, pickaxe modifications, glider skins, clothes and emotes (dances or movements). Fortnite also sells "Battle Passes" or additional levels that allow you to unlock skins, gliders, and emotes unique to that Pass. Fortnite offers four pricing levels for purchasing V-Bucks:

> 1) 1,000 V-Bucks for $9.99;
>
> 2) 2,500 (+300 Bonus) V-Bucks for $24.99;
>
> 3) 6,000 (+1,500 Bonus) V-Bucks for $59.99; or
>
> 4) 10,000 (+3,500 Bonus) V-Bucks for $99.99.

31.    There are four types of emotes: common emotes, uncommon emotes, rare emotes, and epic emotes. The rarer the emote, the more expensive or harder it is to obtain. Uncommon emotes cost 200 V-Bucks. Rare emotes cost 500 V-Bucks. And Epic emotes cost 800 V-Bucks.

32.    To start, Fortnite provides each player with the Dance Moves emote, a common emote, for no compensation. Players can then obtain other emotes by purchasing and playing additional levels in Battle Passes (950 V-Bucks each) that come with emotes unique to that Pass, or by purchasing certain emotes directly with V-Bucks. On some occasions, Fortnite sells Battle Pass emotes directly, without requiring the player to purchase the Battle Pass.

33.    Emotes are incredibly popular and are fundamental to Fortnite's success. Players purchase emotes, alongside clothing and skins, to personalize their Fortnite experience. Emotes have also become popular outside Fortnite. Professional athletes in soccer and other sports have based their celebrations on Fortnite emotes. Young adults, teenagers, and kids also post videos of themselves on YouTube

1    and social media performing emotes under various hashtags, including
2    #fortnitedance or #fortnitevideos.

3         34.    Upon information and belief, Epic creates emotes by copying
4    and coding dances and movements directly from popular videos, movies,
5    and television shows without consent.   Epic does so by coding still
6    frames of the source material.   For example, upon and information and
7    belief, Epic coded the "Ride the Pony" emote, frame-by-frame, from the
8    "Gangnam Style" dance made famous by the Korean entertainer, Psy.
9    The Ride the Pony emote and Psy's dance are identical in every respect.
10   On information and belief, Epic did not obtain Psy's authorization for
11   copying the dance and including it in Fortnite.

12         35.    However, Epic has consistently sought to exploit African-
13   American talent in particular in Fortnite by copying their dances and
14   movements.   Epic has copied the dances and movements of numerous
15   African-American performers, including, for example, the dance from
16   the 2004 Snoop Dogg music video, "Drop It Like It's Hot" (named the
17   "Tidy" emote), Alfonso Ribeiro's performance of his famous "Carlton"
18   dance on The Fresh Prince of Bel-Air television show (named the
19   "Fresh" emote), the dance performed by Will Smith on the same
20   television show (named the "Rambunctious" emote), the dance in
21   Marlon Webb's popular "Band of the Bold" video (named the "Best
22   Mates" emote), Donald Faison's signature dance seen on the NBC
23   television show Scrubs (named the "Dance Moves" emote), Terrence "2
24   Milly" Ferguson's "Milly Rock" dance, and most pertinent here, James
25   "Blocboy JB" Baker's Shoot dance.   Upon information and belief, Epic
26   did not seek consent or authorization to use any of these movements or
27   dances.

28

36.    Soon after its release, Fortnite became an international phenomenon.  The game eclipsed 10 million players merely two weeks after its release; 125 million players by July 2018.  In November 2018, Bloomberg announced that Fortnite had 200 million player accounts across all platforms.

37.    Fortnite's popularity has translated into record sales for Epic.  Analysts have estimated that since its release, Fortnite has generated between $1 billion to $2 billion in revenue through in-game purchases such as emotes.  In May 2018, Fortnite broke its own record by generating approximately $318 million in revenue, the biggest month ever for a video game.  In fact, nearly 80 million people played Fortnite in August 2018.  Because of Fortnite's success, Epic's estimated valuation rose from about $825 million to about $5 billion.  Bloomberg estimates that Epic's valuation could grow to $8.5 billion by 2018's end.

38.    Upon information and belief, Epic will likely continue adding popular emotes to Fortnite without the artists' or creators' consent or approval to attract more players and add to its ever-growing revenue.

**C.    Fortnite's Unauthorized Use of the Shoot**

39.    On May 1, 2018, Fortnite released its Season 4 Battle Pass. Players could purchase the Battle Pass, alongside its accompanying emotes and other customizations, for the regular price of 950 V-Bucks. As part of the Season 4 Pass, Fortnite offered a new emote that it called "Hype."  According to Fortnite, players can obtain the Hype emote as a reward from Tier 63 of the Season 4 Battle Pass.

40.    The "Hype" emote is identical to Baker's Shoot dance.  If obtained, the Fortnite player's avatar can perform the dance during Fortnite gameplay.  The reaction from many players worldwide was

1  immediate recognition of the emote as embodying the "Shoot" while
2  others likely believed it was Epic's original creation.

3      41.    Upon information and belief, Epic intentionally developed
4  the Hype emote to intentionally mimic Baker performing the Shoot.  In
5  fact, many Fortnite players had asked for it by name.

6      42.    Epic did not seek to obtain Baker's authorization or consent
7  for its use of his likeness and the Shoot for the Hype emote.

8      43.    Moreover, Baker did not give Epic express or implied
9  consent for its use of his likeness and the Shoot for the Hype emote.
10  Epic also did not compensate Baker for its use of his likeness and the
11  Shoot for the Hype emote.

12      44.    Upon information and belief, Epic added the Hype emote to
13  intentionally exploit the popularity of Baker, Baker's Shoot and Look
14  Alive songs, and the Shoot dance without providing Baker any form of
15  compensation.

16      45.    Epic profited from its improper misappropriation of the
17  Shoot and Baker's likeness by, inter alia:  1) selling the Season 4 Battle
18  Pass that contains the Hype emote; 2) advertising the Hype emote to
19  attract additional players, including Baker's fans or those persons
20  familiar with the Shoot to play Fortnite and make in-game purchases;
21  3) staying relevant to its current players to incentivize those players to
22  continue playing Fortnite; 4) impliedly representing that Baker
23  consented to Epic's use of his likeness; 5) erroneously cause the
24  association of the Hype with the Shoot; 6) creating the false impression
25  that Baker endorsed Fortnite; and 7) inducing and/or contributing to
26  Fortnite players' avatars performing the Shoot dance.

27      46.    Upon information and belief, Epic uses the Shoot, and other
28  dances, to create the false impression that Epic started these dances

1  and crazes or that the artist who created them is endorsing the game.
2  Indeed, players have posted thousands of videos of themselves
3  performing the "Hype" emote with the hashtag, #fortnitedance, without
4  referencing the Shoot or crediting Baker as the dance's creator and
5  owner.  Accordingly, upon information and belief, Epic actively and
6  knowingly directs, causes, induces, and encourages others, including,
7  but not limited to, its players, designers, suppliers, distributors,
8  resellers, software developers, and repair providers, to misappropriate
9  Baker's likeness and the Shoot dance.

10  47.  Baker has stated in interviews and on social media that he
11  does not consent or approve Epic's use of his likeness and the Shoot for
12  the Hype emote.  Other prominent artists, including Chancelor Bennett,
13  known as Chance the Rapper, and Terrence Ferguson, known as 2
14  Milly, have also publicly disapproved of Epic's practices, and advocated
15  for Epic sharing profits with the artists that created these dances.

16  48.  Accordingly, Epic made a fortune from unlawfully and
17  unfairly misappropriating Baker's and other artists' creative expression
18  and likeness without crediting or compensating these artists.  Baker
19  thus bring this lawsuit to prevent Fortnite from further using his
20  likeness and the Shoot, and to recover the profits rightfully owed to him.

21  **FIRST CAUSE OF ACTION**

22  **(For Direct Infringement of Copyright Against All Defendants)**

23  49.  Baker hereby repeats and realleges the allegations set forth
24  in paragraphs 1 through 48, above, as though fully set forth herein.

25  50.  On or around February 2018, Baker's "Look Alive" music
26  video was published to YouTube where it can be accessed by millions of
27  people.  The Shoot music video shows Baker, as Blocboy JB, rapping
28  and performing the Shoot dance with his friends and rapper Drake.

– 11 –

51.   Baker is in the process of registering the Look Alive music video with the United States Copyright Office.  On January 13, 2019, Baker submitted an application for copyright registration of the Look Alive music video and assigned Copyright Office case number 1-7322162221.  The music video depicts Baker and his friends performing the wildly popular and immediately recognizable Shoot dance.  Baker's videos are the original depictions of the Shoot dance.

52.   Defendants have infringed and continue to infringe Baker's copyrights in the Shoot music video by digitally copying and selling the Shoot dance depicted in the music video as an in-game purchase, under the name "Hype" that, if purchased, a player can use to make his or her avatar perform during Fortnite gameplay; advertising the Shoot in its promotional materials; and creating the Hype emote as a derivative work.

53.   Defendants did not seek to obtain Baker's permission for its use of the Shoot dance for the Hype emote.  Nor have Defendants compensated or credited Baker for their use of the Shoot.

54.   Moreover, Defendants actively and knowingly directed, caused, induced, and encouraged others, including, but not limited to, its players, designers, suppliers, distributors, resellers, software developers, and repair providers, to misappropriate Baker's likeness and the Shoot dance.

55.   Defendants' acts of infringement have been willful, intentional, and purposeful, in disregard of and with indifference to Plaintiffs' rights.

56.   Defendants' willful and continued unauthorized use of the Shoot for commercial gain has caused and will continue to cause confusion and mistake by leading the public to erroneously associate

Complaint

the Hype emote offered by Epic with the Shoot in violation of 17 U.S.C. §§ 101 et seq.

57.    As a result of Defendants' conduct, Baker has been damaged by being precluded from receiving his rightful share of the profits earned by Epic for its improper and unlicensed use of Baker's exclusive copyrights in Fortnite.

58.    Baker is entitled to permanent injunctive relief preventing Defendants, and their officers, agents, and employees, and all related persons from further using the Shoot and engaging in other acts in violation of Copyright law.

59.    As a direct and proximate result of Defendants' infringement of Plaintiffs' copyrights and exclusive rights under copyright, Baker is also entitled to recover damages, including attorneys' fees, and any profits obtained by Defendants as a result of the infringements alleged above, in an amount according to proof to be determined at the time of trial.

60.    In doing the acts herein alleged, Defendants acted fraudulently, willfully, and with malice, and Baker is therefore entitled to punitive damages according to proof at the time of trial.

## SECOND CAUSE OF ACTION

### (For Contributory Infringement of Copyright Against All Defendants)

61.    Baker hereby repeats and realleges the allegations set forth in paragraphs 1 through 60, above, as though fully set forth herein.

62.    Baker is in the process of registering the Look Alive music video with the United States Copyright Office.  On January 13, 2019, Baker submitted an application for copyright registration of the Look Alive music video and assigned Copyright Office case number 1-

7322162221. The music video depicts Baker and his friends, as well as rapper Drake, performing the wildly popular and immediately recognizable Shoot dance. Baker's videos are the original depictions of the Shoot dance.

63. Defendants have infringed and continue to infringe Baker's copyrights in the Shoot music video by digitally copying and selling the Shoot dance depicted in the music video as an in-game purchase, under the name "Hype" that, if purchased, a player can use to make his or her avatar perform during Fortnite gameplay; advertising the Shoot in its promotional materials; and creating the Hype emote as a derivative work.

64. By providing the Hype emote necessary for its players to commit direct copyright infringement, Defendants has and continues to materially contribute to the unauthorized reproductions and distributions by its players of the Shoot.

65. Defendants did not seek to obtain Baker's permission for its use of the Shoot for the Hype emote. Nor have Defendants compensated or credited Baker for their use of the Shoot.

66. Moreover, Defendants actively and knowingly directed, caused, induced, and encouraged others, including, but not limited to, its players, designers, suppliers, distributors, resellers, software developers, and repair providers, to misappropriate Baker's likeness and the Shoot dance.

67. Defendants' acts of infringement have been willful, intentional, and purposeful, in disregard of and with indifference to Plaintiffs' rights.

68. Defendants' willful and continued unauthorized use of Baker's exclusive copyrights for commercial gain has caused and will

continue to cause confusion and mistake by leading the public to erroneously associate the Hype emote offered by Epic with the Shoot in violation of 17 U.S.C. §§ 101 et seq.

69.     As a result of Defendants' conduct, Baker has been damaged by being precluded from receiving his rightful share of the profits earned by Epic for its improper and unlicensed use of Baker's exclusive copyrights in the Shoot dance in Fortnite.

70.     Defendants' conduct is causing and, unless enjoined and restrained by this Court, will continue to cause Plaintiffs great and irreparable injury that cannot be compensated or measured in money. Plaintiffs have no adequate remedy at law.  Pursuant to 17 U.S.C. § 502, Plaintiffs are entitled to injunctive relief, prohibiting further contributory infringements of Plaintiffs' copyrights.

71.     As a direct and proximate result of Defendants' infringement of Plaintiffs' copyrights and exclusive rights under copyright, Baker is also entitled to recover damages, including attorneys' fees, and any profits obtained by Defendants as a result of the infringements alleged above, in an amount according to proof to be determined at the time of trial.

72.     In doing the acts herein alleged, Defendants acted fraudulently, willfully, and with malice, and Baker is therefore entitled to punitive damages according to proof at the time of trial.

### THIRD CAUSE OF ACTION

### (For Violation of the Right of Publicity Under California Common Law Against All Defendants)

73.     Baker hereby repeats and realleges the allegations set forth in paragraphs 1 through 72 above, as though fully set forth herein.

1       74.   Through their use of Shoot dance as an in-game dance emote

2    that can be purchased, Defendants misappropriated Baker's identity.

3    The Hype emote depicts Baker performing the Shoot dance.  Upon

4    information and belief, Defendants created the Hype emote by

5    capturing and digitally copying Baker performing the Shoot.

6    Defendants then utilized the digital copy to create code that, if

7    purchased, allows player avatars to perform the Shoot dance.

8       75.   Defendants did not seek or obtain Baker's authorization or

9    consent for its use of his likeness for the Hype emote.  Nor have

10   Defendants compensated or credited Baker for their use of the Shoot.

11      76.   Defendants used Baker's likeness to generate significant

12   wealth by:  1) selling the Season 4 Battle Pass that contains the Hype

13   emote; 2) advertising the Hype emote to attract additional players,

14   including Blocboy JB's fans or those persons familiar with the Shoot to

15   play Fortnite and make in-game purchases; 3) staying relevant to its

16   current players to incentivize those players to continue playing

17   Fortnite; 4) impliedly representing that Baker consented to Epic's use

18   of his likeness; 5) erroneously cause the association of the Hype with

19   the Shoot; 6) creating the false impression that Blocboy JB endorsed

20   Fortnite; and 7) inducing and/or contributing to Fortnite players'

21   avatars performing the Shoot dance.

22      77.   As the artist Blocboy JB, Baker exploits his identity by

23   performing at concerts, events and festivals.  Baker was damaged by

24   Defendants' conduct as he was prevented from reaping the profits of

25   licensing his likeness to Defendants for commercial gain.

26      78.   Defendants' conduct caused and will continue to cause

27   confusion and mistake by leading the public to erroneously believe that

28   Baker consented to the use of his likeness in the Fortnite game.

1    79.    Baker is entitled to permanent injunctive relief preventing
2    Defendants, and their officers, agents, and employees, and all related
3    persons from further using his likeness.

4    80.    Baker is also entitled to recover damages, including any
5    profits obtained by Defendants as a result of the infringements alleged
6    above, in an amount according to proof to be determined at the time of
7    trial.

8
9                    **FOURTH CAUSE OF ACTION**
10   **(For Violation of the Right of Publicity Under Cal. Civ. Code §**
11                 **3344 Against All Defendants)**

12   81.    Baker hereby repeats and realleges the allegations set forth
13   in paragraphs 1 through 80, above, as though fully set forth herein.

14   82.    Through their use of Shoot dance as an in-game dance emote
15   that can be purchased, Defendants misappropriated Baker's identity.
16   The Hype emote depicts Baker performing the Shoot dance.   Upon
17   information and belief, Defendants created the Hype emote by
18   capturing and digitally copying Baker performing the Shoot.
19   Defendants then utilized the digital copy to create code that, if
20   purchased, allows player avatars to perform the Shoot dance.

21   83.    Defendants did not seek or obtain Baker's authorization or
22   consent for its use of his likeness for the Hype emote.   Nor have
23   Defendants compensated or credited Baker for their use of the Shoot.

24   84.    Defendants used Baker's likeness to generate significant
25   wealth by:  1) selling the Season 4 Battle Pass that contains the Hype
26   emote; 2) advertising the Hype emote to attract additional players,
27   including Blocboy JB's fans or those persons familiar with the Shoot to
28   play Fortnite and make in-game purchases; 3) staying relevant to its

1   current players to incentivize those players to continue playing

2   Fortnite; 4) impliedly representing that Baker consented to Epic's use

3   of his likeness; 5) erroneously cause the association of the Hype with

4   the Shoot; 6) creating the false impression that Blocboy JB endorsed

5   Fortnite; and 7) inducing and/or contributing to Fortnite players'

6   avatars performing the Shoot dance.

7        85.    As the artist Blocboy JB, Baker exploits his identity by

8   performing at concerts, events and festivals.  Baker was damaged by

9   Defendants' conduct as he was prevented from reaping the profits of

10   licensing his likeness to Defendants for commercial gain.

11        86.    Defendants' conduct caused and will continue to cause

12   confusion and mistake by leading the public to erroneously believe that

13   Baker consented to the use of his likeness in the Fortnite game.

14        87.    Baker is entitled to permanent injunctive relief preventing

15   Defendants, and their officers, agents, and employees, and all related

16   persons from further using his likeness.

17        88.    Baker is also entitled to recover damages, including any

18   profits obtained by Defendants as a result of the infringements alleged

19   above, in an amount according to proof to be determined at the time of

20   trial.

21                  **FIFTH CAUSE OF ACTION**

22       **(Unfair Competition Under Cal. Bus. & Prof. Code § 17200)**

23        89.    Baker hereby repeats and realleges the allegations set forth

24   in paragraphs 1 through 88, above, as though fully set forth herein.

25        90.    By misappropriating Baker's copyright and likeness through

26   the improper use of the Shoot dance, Defendants have engaged in

27   business acts or practices that constitute unfair competition in violation

28   of Cal. Bus. & Prof. Code. § 17200.

**Complaint**

91.   As a result of Defendants' violations, Defendants have unjustly enriched themselves by:  1) selling the Season 4 Battle Pass that contains the Hype emote; 2) advertising the Hype emote to attract additional players, including Blocboy JB's fans or those persons familiar with the Shoot to play Fortnite and make in-game purchases; 3) staying relevant to its current players to incentivize those players to continue playing Fortnite; 4) impliedly representing that Baker consented to Epic's use of the Shoot and his likeness; 5) erroneously cause the association of the Hype with the Shoot; 6) creating the false impression that Blocboy JB endorsed Fortnite; and 7) inducing and/or contributing to Fortnite players' avatars performing the Shoot dance.

92.   As a result of Defendants' conduct, Baker has been damaged by being precluded from receiving his rightful share of the profits from selling or licensing his exclusive copyright in the Shoot dance.

93.   Moreover, Baker was damaged by Defendants' conduct as he was prevented from reaping the profits of licensing his likeness to Defendants for commercial gain.

94.   Baker is entitled to permanent injunctive relief preventing Defendants, and their officers, agents, and employees, and all related persons from further using his likeness.

95.   Baker is also entitled to recover damages, including any profits obtained by Defendants as a result of the infringements alleged above, in an amount according to proof to be determined at the time of trial.

## SIXTH CAUSE OF ACTION

### (Trademark Infringement Under 15 U.S.C. § 1125(a))

96.   Plaintiffs hereby repeat and reallege the allegations set forth in paragraphs 1 through 95 above, as though fully set forth herein.

97.   Since creating the Shoot in 2017 and performing it in the Shoot music video, the Shoot dance has become intricately associated with Baker's Blocboy JB identity and persona.  By virtue of Baker's prominent and continuous use of the Shoot device in the "Shoot" and "Look Alive" music videos, Plaintiffs' mark has become distinctive and famous within the meaning of 15 U.S.C. § 1125(c).  The Shoot dance is distinct and immediately recognizable.

98.   In Fortnite, players can have their characters perform the Shoot within the game.  This is likely to cause confusion, mistake, or deception as to the affiliation, connection, or association of Baker with Defendants or Fortnite, or as to the origin, sponsorship, or approval of Baker's goods, services, or commercial activities by Defendants. Through Defendants' unauthorized use of the Shoot device in Fortnite, Defendants have misappropriated Plaintiffs' trademark.

99.   Moreover, Plaintiffs are damaged by Defendants' exploitation of Plaintiffs' mark through 1) selling the infringing Hype emote as part of the Season 4 Battle Pass; 2) advertising the Hype emote to attract additional players, including Baker's fans or those persons familiar with the Shoot to play Fortnite and make in-game purchases; 3) using Baker's fame to stay relevant to its current players to incentivize those players to continue playing Fortnite; 4) impliedly representing that Baker consented to Epic's use of his Shoot device; 5) intentionally causing the erroneous public association between the Shoot device and Fortnite; 6) creating the false impression that Baker endorsed Fortnite; and 7) inducing and/or contributing to the performance and misattribution of the Shoot by others.

1    100.  As a result of Defendants' conduct, Plaintiffs have been
2  damaged by being precluded from receiving their rightful share of the
3  profits from selling or licensing the device.

4    101.  Moreover, Plaintiffs were damaged by Defendants' conduct
5  as they were prevented from reaping the profits of licensing the device
6  to Defendants for commercial gain.

7    102.  Plaintiffs are entitled to permanent injunctive relief
8  preventing Defendants, and their officers, agents, and employees, and
9  all related persons from further using the Shoot device.

10    103.  Plaintiffs are also entitled to recover damages, including any
11  profits obtained by Defendants as a result of the infringements alleged
12  above, in an amount according to proof to be determined at the time of
13  trial.

14              **SEVENTH CAUSE OF ACTION**

15          (Trademark Infringement Under California Common Law)

16    104.  Plaintiffs hereby repeat and reallege the allegations set
17  forth in paragraphs 1 through 103 above, as though fully set forth
18  herein.

19    105.  Since 2017, Baker has used, and thereby owns common law
20  trademark rights in the Shoot device.  The Shoot has acquired
21  distinctiveness through Baker's continuous and widespread use of the
22  Shoot device in performances and videos in the United States and
23  worldwide.

24    106.  In Fortnite, players can have their characters perform the
25  Shoot device within the game.  Through Defendants' unauthorized use
26  of the Shoot device in Fortnite, Defendants have misappropriated
27  Plaintiffs' trademark.

28

1   107. Moreover, Plaintiffs are damaged by Defendants'
2   exploitation of the Shoot through 1) selling the Hype emote as part of
3   the Season 4 Battle Pass; 2) advertising the Hype emote to attract
4   additional players, including Baker's fans or those persons familiar
5   with the Shoot to play Fortnite and make in-game purchases; 3) using
6   Baker's fame to stay relevant to its current players to incentivize those
7   players to continue playing Fortnite; 4) impliedly representing that
8   Baker consented to Epic's use of his Shoot device; 5) intentionally
9   causing the erroneous public association between the Shoot device and
10  Fortnite; 6) creating the false impression that Baker endorsed Fortnite;
11  and 7) inducing and/or contributing to the performance and
12  misattribution of the Shoot by others.

13  108. As a result of Defendants' conduct, Plaintiffs have been
14  damaged by being precluded from receiving their rightful share of the
15  profits from selling or licensing the Shoot device.

16  109. Moreover, Plaintiffs were damaged by Defendants' conduct
17  as he was prevented from reaping the profits of licensing the Shoot
18  device to Defendants for commercial gain.

19  110. Plaintiffs are entitled to permanent injunctive relief
20  preventing Defendants, and their officers, agents, and employees, and
21  all related persons from further using the device.

22  111. Plaintiffs are also entitled to recover damages, including any
23  profits obtained by Defendants as a result of the infringements alleged
24  above, in an amount according to proof to be determined at the time of
25  trial.

26
27
28

**Complaint**

1

## EIGHTH CAUSE OF ACTION

2

(Trademark Dilution Under 15 U.S.C. § 1125(c))

3   112. Plaintiffs hereby repeat and reallege the allegations set
4   forth in paragraphs 1 through 111 above, as though fully set forth
5   herein.

6   113. By virtue of the prominent and continuous use of the Shoot
7   device, Plaintiffs' mark has become distinctive and famous within the
8   meaning of 15 U.S.C. § 1125(c).

9   114. Defendants' conduct dilutes the distinctive quality of
10   Plaintiffs' mark in violation of Section 43(c) of the Lanham Act, 15
11   U.S.C. § 1125(c).

12   115. Defendants' conduct and actions have lessened the capacity
13   of Plaintiffs' mark as Defendants did not credit Baker.

14   116. Defendants' acts have been deliberate, willful, and
15   intentional and purposeful to exploit the popularity of the Shoot.

16   117. Defendants threaten to continue to advertise, promote,
17   market, sell and offer for sale the Hype emote utilizing Plaintiffs' mark,
18   and unless and restrained and enjoined, will continue to do so to
19   Plaintiffs' irreparable damage.

20   118. Defendants' conduct is causing and, unless enjoined and
21   restrained by this Court, will continue to cause Plaintiffs great and
22   irreparable injury that cannot be compensated or measured in money.
23   Plaintiffs thus have no adequate remedy at law and is entitled to
24   injunctive relief, prohibiting further dilution of Plaintiffs' mark.

25   119. In addition, Plaintiffs have incurred costs and attorneys' fees
26   to bring this action.

27

28

**Complaint**

## PRAYER FOR RELIEF

**As to the First Cause of Action:**

1. For an order restraining Defendants from using, selling, or displaying Baker's copyright in its Fortnite game;

2. For an award of damages according to proof;

3. For punitive and/or exemplary damages;

4. For attorney's fees and costs;

**As to the Second Cause of Action:**

5. For an order restraining Defendants from using, selling, or displaying Baker's copyright in its Fortnite game;

6. For an award of damages according to proof;

7. For punitive and/or exemplary damages;

8. For attorney's fees and costs;

**As to the Third Cause of Action:**

9. For an order restraining Defendants from using Baker's likeness in its Fortnite game;

10. For an award of damages according to proof;

**As to the Fourth Cause of Action:**

11. For an order restraining Defendants from using, selling, or displaying Baker's copyright in its Fortnite game;

12. For an award of damages according to proof; and

13. For punitive and/or exemplary damages;

**As to the Fifth Cause of Action:**

14. For an order restraining Defendants from using, selling, or displaying Baker's copyright in its Fortnite game;

15. For an award of damages according to proof; and

**Complaint**

**As to the Sixth Cause of Action:**

16.   For an order restraining Defendants from using, selling, or displaying Plaintiffs' mark in the Fortnite game;

17.   For an award of damages according to proof;

18.   For punitive and/or exemplary damages; and

19.   For attorneys' fees and costs;

**As to the Seventh Cause of Action:**

20.   For an order restraining Defendants from using, selling, or displaying Plaintiffs' mark in the Fortnite game;

21.   For an award of damages according to proof; and

**As to the Eighth Cause of Action:**

22.   For an order restraining Defendants from using, selling, or displaying Plaintiff's mark in the Fortnite game;

23.   For an award of damages according to proof;

24.   For punitive and/or exemplary damages;

25.   For attorneys' fees and costs;

**As to All Causes of Action:**

26.   For costs of suit; and

27.   For such other and further relief as the Court may deem proper.

Dated: January 14, 2019          Respectfully Submitted,

**Pierce Bainbridge Beck Price & Hecht LLP**


By:  _/s/ Carolynn Kyungwon Beck_
       Carolynn Kyungwon Beck
       *Attorneys for Plaintiffs*

**Complaint**

1

# JURY TRIAL

2          Plaintiffs request a trial by jury on all issues to which he is entitled

3    a jury.

4

5    Dated: January 14, 2019          Respectfully Submitted,

6                                     **Pierce Bainbridge Beck Price &**
7                                     **Hecht LLP**

8                                     By:  */s/ Carolynn Kyungwon Beck*
9                                     Carolynn Kyungwon Beck

10                                    John M. Pierce (SBN 250443)
11                                    jpierce@piercebainbridge.com
                                      Carolynn Kyungwon Beck (SBN
12                                    264703)
13                                    cbeck@piercebainbridge.com
                                      Daniel Dubin (SBN 313235)
14                                    ddubin@piercebainbridge.com
15                                    600 Wilshire Boulevard, Suite 500
                                      Los Angeles, California 90017-3212
16                                    (213) 262-9333
17
18                                    David L. Hecht (NY4695961) (*pro*
19                                    *hac vice* admission pending)
                                      dhecht@piercebainbridge.com
20                                    20 West 23rd Street, Fifth Floor
                                      New York, New York 10010
21                                    (212) 484-9866
22
23                                    Sandy K. Lal (NY3978418) (*pro hac*
                                      *vice* admission pending)
24                                    Sandy Lal & Associates, LLC
25                                    40 East 9th Street, Third Floor
                                      New York, New York 10003
26                                    (212) 260-8880
27
28                                    *Attorneys for Plaintiffs*

**Complaint**